DAVID H. STERN (SBN 196408)
david.stern@dechert.com
ALEX SPJUTE (SBN 229796)
alex.spjute@dechert.com
ANNA DO (SBN 281327)
anna.do@dechert.com
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA  90071-2032
Telephone: (213) 808-5700
Facsimile:  (213) 808-5760

Attorneys for Plaintiffs
Active Sports Lifestyle USA, LLC, ARS Brands,
LLC, and Active RS Holdings, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVE SPORTS LIFESTYLE USA, LLC, ARS BRANDS, LLC, AND ACTIVE RS HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPAREL PRODUCTION SERVICES GLOBAL, LLC; ACTIVE HOLDINGS, LLC; and ONEWORLD STAR INTERNATIONAL HOLDINGS LTD., <br><br> Defendants. | Case No.  2:20-CV-02056-PA-JCx <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **(1) Breach of Contract – Deferred Purchase Price Payment;** <br><br> **(2) Breach of Contract – Transitional Services Agreement;** <br><br> **(3) Breach of Contract - Foreign Trademark Expense Agreement;** <br><br> **(4) Breach of Contract – Contractual Guaranty;** <br><br> **(5) Indemnification Against Apparel Production Services Global, LLC; and** <br><br> **(6) Indemnification Against Active Holdings, LLC.** |

Plaintiffs Active Sports Lifestyle USA, LLC, ARS Brands, LLC, and Active

RS Holdings, Inc. (collectively, "Plaintiffs" or "Sellers") allege as follows for its

Complaint against defendants Active Holdings, LLC, Apparel Production Services Global, LLC, and Oneworld Star International Holdings Ltd. (collectively, "Defendants"):

## JURISDICTION

1.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because the citizenship of all Plaintiffs is diverse from the citizenship of all Defendants and because the amount in controversy exceeds $75,000.  This Court has personal jurisdiction over the Defendants because Defendants reside and/or transact business in the County of Los Angeles and the contracts at issue in this action were entered into and performed in Los Angeles.

## NATURE OF THE CASE

2.      Plaintiffs bring this action for breach of contract and indemnification to recover amounts owed to them by Defendants under the terms of four written agreements referred to herein as the Asset Purchase Agreement, the Transition Services Agreement, the Letter Agreement, and the Foreign Trademark Expense Agreement (collectively, "Purchase Documents"), executed in connection with Defendants' purchase of substantially all of the Plaintiffs' assets. Defendants have breached their obligations under the agreements by failing to make all payments owed under those agreements. Plaintiffs are entitled to payment of the amounts due under the agreements, which performance is guaranteed by defendant Oneworld Star International Holdings Ltd.  Plaintiffs are also entitled to full indemnification as provided for in the Asset Purchase Agreement.

## THE PARTIES

3.      Plaintiff Active RS Holdings, Inc. ("ARS Holdings") is a Delaware corporation with a principal place of business in New York, New York.  ARS Holdings is a citizen of Delaware and New York.

4.      Plaintiff Active Sports Lifestyle USA, LLC ("ASLUSA") is a Florida limited liability company, whose sole member is ARS Holdings, a citizen of

1    Delaware and New York.  ASLUSA is therefore a citizen of Delaware and New

2    York.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir.

3    2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its

4    owners/members are citizens.").

5         5.    Plaintiff ARS Brands, LLC ("ARS") is a Delaware limited liability

6    company, whose sole member is ARS Holdings, a citizen of Delaware and New

7    York.  ARS is therefore a citizen of Delaware and New York.

8         6.    Defendant Oneworld Star International Holdings Ltd. ("Oneworld" or

9    "Purchaser Guarantor") is a company incorporated under the laws of the British

10   Virgin Islands, with its principal place of business in Hong Kong.  Oneworld is

11   therefore a citizen of the United Kingdom and Hong Kong.  *See JPMorgan Chase*

12   *Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 100 (2002) ("It is

13   enough to hold that the United Kingdom's retention and exercise of authority over

14   the BVI renders BVI citizens, both natural and juridic, 'citizens or subjects' of the

15   United Kingdom under 28 U.S.C. § 1332(a)").  On information and belief,

16   Oneworld is owned and controlled by Shangying Global Co. Ltd., a corporation

17   organized under the laws of China with its principal place of business in Shangahi,

18   China.  Shangying Global Co. Ltd., the owner of Oneworld, is therefore a citizen of

19   China.

20        7.    Defendant Apparel Production Services Global, LLC ("APS") is a

21   Delaware limited liability company.  APS's sole member is Oneworld; APS is,

22   therefore, a citizen of the United Kingdom and Hong Kong.  APS operates as a

23   subsidiary of Oneworld Star International Holdings Ltd.  Its website boasts that it is

24   "a division of OneWorld Star, Intl."

25        8.    Defendant Active Holdings, LLC ("Active Holdings," and together

26   with APS "Purchaser") is a Delaware limited liability company.  Active Holdings'

27   sole member is APS, whose sole member in turn is Oneworld.  Active Holdings is,

28   therefore, a citizen of the United Kingdom and Hong Kong.  Active Holdings

Dechert LLP

CASE NO. 2:20-CV-02056-PA-JC
FIRST AMENDED COMPLAINT

1  operates as a subsidiary of Apparel Production Services Global, LLC.

2  **VENUE**

3  9.    Venue in the Central District of California is proper for Plaintiffs'

4  claims because Defendants reside and/or transact business in the County of Los

5  Angeles and the contracts at issue in this action were entered into and performed in

6  Los Angeles. Additionally, the parties specifically consented to venue and

7  jurisdiction in United States District Court for the Central District of California

8  located in Los Angeles, California as set forth in the forum selection clause of the

9  Asset Purchase Agreement.

10  **BACKGROUND**

11  10.    For many years, Sellers were engaged in — and well known in the

12  respective market for — the business of designing, marketing and selling sports

13  apparel, footwear, skateboards, snowboards and other sporting products and

14  accessories.

15  **A.    The Asset Purchase Agreement**

16  11.    On or about December 1, 2017, defendants APS and Oneworld entered

17  into the Asset Purchase Agreement with Sellers and non-party Tengram Capital

18  Partners Gen2 Fund, L.P. (the Sellers' guarantor).  A copy of the Asset Purchase

19  Agreement is attached hereto and incorporated herein by reference as **Exhibit 1**.

20  12.    APS later assigned to Active Holdings, and Active Holdings assumed

21  from APS, all of APS's right, title and interest in the Asset Purchase Agreement.

22  13.    Pursuant to the Asset Purchase Agreement, as amended, Sellers agreed

23  to sell substantially all of its assets to Purchaser for an upfront purchase price of

24  $7,000,000, subject to a number of adjustments.  (*See* Exs. 1, 6.)

25  14.    Under the terms of the Asset Purchase Agreement, Purchaser also

26  agreed to indemnify Sellers for Purchaser's performance under the Assert Purchase

27  Agreement. Specifically, Section 9.2 of the Asset Purchase Agreement provides as

28  follows:

DECHERT LLP

- 4 -

CASE NO. 2:20-CV-02056-PA-JC
FIRST AMENDED COMPLAINT

Agreement of the Purchaser to Indemnify. Subject to the terms and conditions of this Article 9, following the Closing, the Purchaser agrees to indemnify and hold harmless the Sellers and their respective officers, directors, members, managers, shareholders, partners, employees, agents and other Related Persons ("Seller Indemnitees") . . . from all Losses asserted against, relating to or incurred by Seller Indemnitees arising out of:

(a) the breach of any representation or warranty of the Purchaser contained in or made pursuant to any Purchase Document;

(b) the breach of any covenant or agreement of the Purchaser contained in or made pursuant to any Purchase Document …

The obligations set forth in this Section 9.2 shall include indemnification against any and all actions, suits, claims, … costs and other expenses (including legal fees and expenses) incident to any of the foregoing or to the enforcement of this Section 9.2.

(*See* Ex. 1.)

15.     The Asset Purchase Agreement defines the term "Purchase Documents" as including the "[Purchase] Agreement, the Seller Note, the License Agreement and the other documents or agreements to be executed in connection [with the Asset Purchase Agreement] and side letters related thereto."  (*See* Ex. 1.)

16.     The Asset Purchase Agreement also includes a forum selection provision at Section 12.10, which states: "Each Party submits to the exclusive jurisdiction and venue of the United States District Court of the Central District of California located in Los Angeles, California."  (Ex. 1 at Section 12.10.)

17.     As part of the terms of the Asset Purchase Agreement, defendant Oneworld expressly and unconditionally guaranteed all of the payment obligations under the Asset Purchase Agreement, as well as under any other Purchase Documents.  Specifically, Section 12.17 of the Asset Purchase Agreement provides

1  as follows:

2       Section 12.17 Purchaser Guarantee.

3       (a) To induce the Sellers to enter into the Purchase Documents,

4  Purchaser Guarantor [Oneworld] guarantees to the Sellers the due

5  and punctual performance and discharge of (i) Purchaser's

6  payment obligations under the Purchase Documents and (ii) all

7  costs and expenses (including reasonable legal fees and expenses)

8  and other amounts payable with respect to collecting such amounts

9  (the obligations and amounts referred to in clauses (i) through (ii)

10  being referred to herein as the "Purchaser Guaranteed

11  Obligations") . . . .

12       (b) The Purchaser Guarantor's liability hereunder is absolute,

13  unconditional, irrevocable and continuing irrespective of (a) any

14  lack of validity or enforceability of this Agreement against the

15  Purchaser or any other agreement or instrument referred to in this

16  Agreement, or (b) any modification, amendment or waiver of, or

17  any consent to departure from, any of the foregoing agreements

18  that may be agreed to by Purchaser or the Purchaser Guarantor. . .

19  Purchaser Guarantor's obligations under this Section 12.17

20  constitute an unconditional and continuing guarantee of payment

21  and not of collection. In furtherance of the foregoing, the

22  Purchaser Guarantor acknowledges that its liability hereunder

23  shall extend to the full amount of the Purchaser Guaranteed

24  Obligations . . . .

25       ****

26       (d) The Purchaser Guarantor waives promptness, diligence, notice

27  of the acceptance of this Agreement and of the Purchaser

28  Guaranteed Obligations, presentment, demand for payment, notice

1      of non-performance, default, dishonor and protest, notice of any

2      Purchaser Guaranteed Obligations incurred and all other notices of

3      any kind (other than notices to Purchaser pursuant to this

4      Agreement), all rights and defenses which may be available by

5      virtue of any stay, moratorium or other similar Laws now or

6      hereafter in effect or any right to require the marshaling of assets

7      of Purchaser or any other Person now or hereafter liable with

8      respect to the Purchaser Guaranteed Obligations. To the fullest

9      extent permitted by Law, the Purchaser Guarantor hereby expressly

10      waives any and all surety defenses and rights or defenses arising by

11      reason of any Laws which would otherwise require any election of

12      remedies by the Sellers. . . .

13   (*See* Ex. 1.)

14        18.    After entering into four separate amendments to the Asset Purchase

15   Agreement, copies of which are attached hereto as **Exhibits 2-5**, on or about May 4,

16   2018, the parties entered into a Fifth Amendment to the Asset Purchase Agreement.

17   A copy of the Fifth Amendment to the Asset Purchase Agreement is attached hereto

18   as **Exhibit 6**. The Fifth Amendment amended the Asset Purchase Agreement by,

19   *inter alia*, requiring Purchaser to make a $2,000,000 deferred payment, subject to

20   an offset of $125,000, for a total of $1,875,000 (the "Deferred Purchase Price") on

21   or before May 19, 2019 (366 days following the closing date):

22      Section 2.1(c). The following Section 2.1(c) is hereby added to the

23      Agreement:

24      "(c) Two Million Dollars ($2,000,000) of the Base Purchase

25      Price (the *"Deferred Purchase Price Payment"*) shall be payable

26      on or before the date that is three hundred and sixty-six days

27      following the Closing Date by Purchaser by wire transfer of

28      immediately available funds to an account designated by Sellers,

Dechert LLP

CASE NO. 2:20-CV-02056-PA-JC
FIRST AMENDED COMPLAINT

subject to any claims for indemnification pursuant to Article 9 hereof. Notwithstanding the foregoing, the Purchaser shall have the right to deduct and set-off against the Deferred Purchase Price Payment (x) $125,000 (as compensation for certain Liabilities for Store Credits), and (y) the total amount of Accrued Vacation.

(*See* Ex. 6.)

**B.      The Transition Services Agreement and Letter Agreement**

19.      On May 4, 2018, Purchaser and Sellers entered into the Transition Services Agreement pursuant to which Sellers agreed to provide certain services to Purchaser to facilitate the transactions contemplated by the Asset Purchase Agreement. Under the terms of the Transition Services Agreement, Sellers specifically agreed to allow Purchaser to occupy store space in Tustin, California and Thousand Oaks, California, to aid the post-sale transition. In exchange, Purchaser agreed to make certain monthly payments to Sellers.

20.      Purchaser and Sellers modified the payment terms of the Transition Services Agreement in the Letter Agreement, which provides in relevant part as follows:

This letter will confirm the agreement of Active Holdings, LLC to pay the Sellers the amount of $770,000 under the above referenced agreement (the "Transition Payment"). The Transition Payment will be paid over the 12-month period following the signing of the Transition Services Agreement. Except as set forth herein, the terms of the Transition Services Agreement will remain in full force and effect subject to enforcement by its terms.

**C.      The Foreign Trademark Expense Agreement**

21.     Concurrent with the Asset Purchase Agreement, defendants APS (as the purchaser) and Oneworld (as guarantor) and plaintiffs ASLUSA, ARS, and ARS Holdings entered into the Foreign Trademark Expense Agreement dated December 1, 2017.  A copy of the Foreign Trademark Expense Agreement is attached hereto as **Exhibit 7**.

22.     Sellers were in the process of securing the ACTIVE, ACTIVE AND DESIGN, and ACTIVE RIDE SHOP marks ("Active Marks") in Europe and China.  The parties agreed that once Sellers secured the marks, APS would pay Sellers certain "Holdback Amounts."  Sellers were successful in securing the Europe marks, triggering APS's payment obligations with respect to those marks.  Specifically, under the Foreign Trademark Expense Agreement, APS was required to pay Sellers $3,000,000 (the Europe Holdback Amount), subject to deductions for any costs and expenses for the acquisition and registration of the marks in Europe and China, not applicable here. *See* Ex. 7 at ¶5.

23.     The Foreign Trademark Expense Agreement states in relevant part:

>    Any funds from the Europe Holdback Amount, as defined below,
>    that have not been previously recovered by the Purchaser pursuant
>    to the Purchase Agreement will be paid by Purchaser to an account
>    designated in writing by the Sellers' Representative on the later of
>    (a) the eighteen (18) month anniversary of the Closing Date, (b)
>    the date on which no notice of a Claim pursuant to Article 9 of the
>    Purchase Agreement previously delivered by a Purchaser remains
>    outstanding or otherwise unresolved . . . . . Purchaser shall have
>    the right, in its reasonable and good faith discretion, to use the
>    funds in the Europe Holdback Amount towards the costs and

expenses . . . of the acquisition and registration of the European
Trademarks . . . . Upon payment of the Europe Holdback Amount,
Purchaser shall provide Sellers' Representative with an accounting
of any such costs and expenses deducted. "Europe Holdback
Amount" means no more than Three Million Dollars ($3,000,000)
subject to the deductions provided herein.

Ex. 7 at ¶ 5.

24.     As of November 2019—the 18-month anniversary of the closing
date—Purchaser owed $3,000,000 to Sellers.

25.     Neither APS nor Oneworld, as guarantor, have paid the Europe
Holdback Amount owed under the Foreign Trademark Expense Agreement.

**D.      Defendants' Defaults on the Asset Purchase Agreement and Other
Purchase Documents**

26.     Purchaser failed to pay any of the required Deferred Purchase
Price, the Transition Payment, or the Europe Holdback Amount when due.

27.     By letters dated, June 27, 2019, and July 12, 2019, Sellers made a
claim for indemnification from Purchaser, under Article 9 of the Asset Purchase
Agreement, for losses incurred up to that point by Sellers as a result of Purchaser's
failure to pay the Deferred Purchase Price of $2,000,000 (less $125,000 in relation
to certain liabilities for store credits), and failure to pay the Transition Payment of
$770,000, among other things.

28.     On July 19, 2019, Purchaser sent a letter in response to Sellers' claim
for indemnification. Purchaser's response did not articulate with any reasonable
degree of specificity a basis for objecting to Purchasers' claim for indemnification.
Nonetheless, Sellers engaged in good faith negotiations with Purchaser over the
next several months, to no avail.

29.     As a result of Purchaser's failure to pay the payments described
herein, Seller is now owed at least $5,645,000, plus interest from Purchaser.

30. Sellers have complied with all necessary contractual precursors to instituting this action.

31. Sellers have performed their obligations under the Asset Purchase Agreement, Transition Services Agreement, and Foreign Trademark Expense Agreement and are entitled to payment in full.

## FIRST CAUSE OF ACTION

(Breach of Contract against Active Holdings, LLC)

*Deferred Purchase Price Payment*

32. Sellers incorporate and reallege each of the allegations contained in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. Sellers and Purchaser entered into the Asset Purchase Agreement.

34. Pursuant to Section 2.1 (c) of the Asset Purchase Agreement, as amended, Purchaser was obligated to pay Sellers a deferred purchase price payment of $1,875,000 ("Deferred Purchase Price") on May 19, 2019.

35. Sellers have performed in accordance with its obligations under the Asset Purchase Agreement.

36. Purchaser has breached its obligations under the Asset Purchase Agreement by, *inter alia*, failing to pay the Deferred Purchase Price.

37. As a direct and proximate result of Purchaser's breaches of the Asset Purchase Agreement, Sellers have sustained damages in an amount to be proven at trial, but not less than $1,875,000, plus pre and post-judgment interest at the applicable legal rate.

## SECOND CAUSE OF ACTION

(Breach of Contract against Active Holdings, LLC)

*Transition Services Agreement*

38. Sellers incorporate and reallege each of the allegations contained in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

DECHERT LLP

CASE NO. 2:20-CV-02056-PA-JC
FIRST AMENDED COMPLAINT

39.     The Transition Services Agreement is an enforceable agreement between Purchaser and the Sellers, pursuant to which Purchaser agreed to make monthly payments to Sellers in exchange for providing certain services.

40.     In conjunction with the Transition Services Agreement, Purchaser and Sellers entered into a Letter Agreement, whereby Purchaser became obligated to pay Sellers a Transition Payment of $770,000, over a 12-month period beginning in May, 2018.

41.     To date, Active Holdings has not made a single monthly payment.

42.     Sellers have made due demand for payment.

43.     Sellers have performed in accordance with their obligations under the Transition Services Agreement.

44.     Active Holdings has breached its obligations under the Transition Services Agreement and the Letter Agreement by, *inter alia*, failing to pay the amounts due to Sellers.

45.     As a direct and proximate result of Active Holdings' breaches of the Transition Services Agreement and Letter Agreement, Sellers have sustained damages in an amount to be proven at trial, but not less than $770,000, plus pre and post-judgment interest at the applicable legal rate.

## THIRD CAUSE OF ACTION

(Breach of Contract against Apparel Production Services Global, LLC)

*Foreign Trademark Expense Agreement*

46.     Sellers incorporate and reallege each of the allegations contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     The Foreign Trademark Expense Agreement is an enforceable agreement between APS and the Sellers, pursuant to which Purchaser was required to pay Sellers $3,000,000 (the Europe Holdback Amount) for the acquisition and registration of the Active Marks in Europe.

48.     Sellers have performed in accordance with their obligations under the Foreign Trademark Expense Agreement.

49.     APS failed to pay the $3,000,000 Europe Holdback Amount, in breach of the Foreign Trademark Expense Agreement.

50.     As a direct and proximate result of APS's breach of the Foreign Trademark Expense Agreement, Sellers have sustained damages in an amount to be proven at trial, but not less than $3,000,000, plus pre and post-judgment interest at the applicable legal rate.

## FOURTH CAUSE OF ACTION

(Breach of Contract against Oneworld Star International Holdings Ltd.)

*Contractual Guaranty*

51.     Sellers incorporate and reallege each of the allegations contained in paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     Sellers and Oneworld are parties to the Asset Purchase Agreement.

53.     Section 12.17 of the Asset Purchase Agreement contains an unconditional purchaser guarantee (the "Purchaser Guarantee") running from Oneworld in favor of the Sellers.

54.     Pursuant to the Purchaser Guarantee, Oneworld unconditionally guaranteed "the due and punctual performance and discharge of (i) Purchaser's payment obligations under the Purchase Documents and (ii) all costs and expenses (including reasonable legal fees and expenses) and other amounts payable with respect to collecting such amounts)."

55.     The Asset Purchase Agreement, the Transition Services Agreement, and the Foreign Trademark Expense Agreement are Purchase Documents within the meaning of the Purchaser Guarantee.

56.     Purchaser has failed to meet its payment obligations under the Asset Purchase Agreement by*, inter alia*, failing to pay the Deferred Purchase Price, Transition Payment, and Europe Holdback Amount when due.

57.     Oneworld is liable for the amounts owed by Purchaser under the Asset Purchase Agreement, Transition Services Agreement, and the Foreign Trademark Expense Agreement, as well as Sellers' costs of collection, including but not limited those reasonable attorneys' fees and costs incurred in this litigation.

58.     Oneworld has failed to pay Sellers the amounts owed by Purchaser under the Asset Purchase Agreement, Transition Services Agreement, and the Foreign Trademark Expense Agreement.

59.     Oneworld's failure to comply with the terms of the Purchaser Guarantee constitutes a breach of contract.

60.     As a direct and proximate cause of Oneworld's breach of contract, Sellers have been damaged in an amount to be determined at trial, but not less than $5,645,000, plus interest, attorney's fees and costs.

## FIFTH CAUSE OF ACTION

(Indemnification against Apparel Production Services Global, LLC)

61.     Sellers incorporate and reallege each of the allegations contained in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.     Pursuant to Section 9.2(a) of the Asset Purchase Agreement, APS agreed to indemnify and hold Sellers harmless for all losses relating to or incurred by Sellers arising out of "the breach of any covenant or agreement of the Purchaser contained in or made pursuant to any Purchase Document."

63.     The obligation to indemnify Sellers under Section 9.2 of the Asset Purchase Agreement includes costs and expenses (including legal fees and expenses) to enforce the indemnification itself.

64.     By failing to pay the Deferred Purchase Price of $1,875,000 to Sellers when due, Purchaser breached a covenant and agreement made in the Asset Purchase Agreement, one of the Purchase Documents.

65.     By failing to pay the Transition Payment of $770,000 to Sellers, Purchaser breached a covenant and agreement made in the Transition Services Agreement, one of the Purchase Documents.

66.     By failing to pay the Europe Holdback Amount of $3,000,000 to Sellers, Purchaser breached a covenant and agreement made in the Trademark Expense Agreement, one of the Purchase Documents.

67.     Purchaser's breach of the aforementioned agreements for payment caused Sellers to sustain "Losses," as that term is defined in the Asset Purchase Agreement, in an amount to be determined at trial, but in no event less than $5,645,000.

68.     Sellers' notified APS of its contractual indemnification obligations under the Asset Purchase Agreement, but APS refused to comply with the same, and refused to reimburse Sellers for the Losses they have suffered.

69.     APS's failure to provide the required indemnification is a breach of the its obligations under the Asset Purchase Agreement.

70.     As a result of APS's refusal to honor the obligation to indemnify Sellers pursuant to the precise terms of the Asset Purchase Agreement, Sellers have been forced to initiate this action.

71.     Sellers are accordingly entitled to an order: (i) declaring that APS breached the indemnification obligations under the Asset Purchase Agreement; (ii) ordering APS to pay Sellers an amount to be determined at trial but in no event less than $5,645,000; (iii) ordering APS to pay Sellers' costs and fees, including attorneys' fees, incurred in this action.

## SIXTH CAUSE OF ACTION

(Indemnification against Active Holdings, LLC)

72.     Sellers incorporate and reallege each of the allegations contained in paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.     Pursuant to Section 9.2(a) of the Asset Purchase Agreement, APS agreed to indemnify and hold Sellers harmless for all losses relating to or incurred by the Sellers arising out of "the breach of any covenant or agreement of the Purchaser contained in or made pursuant to any Purchase Document."

74.     Pursuant to an Assignment Agreement between APS and Purchaser, dated May 4, 2018, APS assigned to Purchaser, and Purchaser assumed from APS, all of APS's right, title and interest in the Purchase Documents, including its indemnification obligations under Section 9.2(a) of the Asset Purchase Agreement.

75.     The obligation to indemnify Sellers under Section 9.2 of the Asset Purchase Agreement includes costs and expenses (including legal fees and expenses) to enforce the indemnification itself.

76.     By failing to pay the Deferred Purchase Price of $1,875,000 to Sellers when due, Purchaser breached a covenant and agreement made in the Asset Purchase Agreement, one of the Purchase Documents.

77.     By failing to pay the Transition Payment of $770,000 to Sellers, Purchaser breached a covenant and agreement made in the Transition Services Agreement, one of the Purchase Documents.

78.     By failing to pay the Europe Holdback Amount of $3,000,000 to Sellers, Purchaser breached a covenant and agreement made in the Trademark Expense Agreement, one of the Purchase Documents.

79.     Purchaser's breach of the aforementioned agreements for payment caused Sellers to sustain "Losses," as that term is defined in the Asset Purchase Agreement, in an amount to be determined at trial, but in no event less than $5,645,000.

80.     Sellers notified Purchaser of its contractual indemnification obligations under the Asset Purchase Agreement, but Purchaser has refused to comply with the same, and has refused to reimburse Sellers for the Losses they have suffered.

Dechert LLP

- 16 -

81.     Purchaser's failure to provide the required indemnification is a breach of the Purchaser's obligations under the Asset Purchase Agreement.

82.     As a result of Purchaser's refusal to honor the obligation to indemnify Sellers pursuant to the precise terms of the Asset Purchase Agreement, Sellers have been forced to initiate this action.

83.     Sellers are accordingly entitled to an order: (i) declaring that Purchaser has breached its indemnification obligations under the Asset Purchase Agreement; (ii) ordering Purchaser to pay Sellers an amount to be determined at trial but in no event less than $5,645,000; (iii) ordering Purchaser to pay Sellers' costs and fees, including attorneys' fees, incurred in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Sellers respectfully demands judgment against Defendants as follows:

A.     On Sellers' First Cause of Action, for an order against Active Holdings, LLC awarding Sellers damages in an amount to be determined at trial but in no event less than $1,875,000, plus interest;

B.     On Sellers' Second Cause of Action, for an order against Active Holdings, LLC awarding Sellers damages in an amount to be determined at trial but in no event less than $770,000, plus interest;

C.     On Sellers' Third Cause of Action, for an order against Apparel Production Services Global, LLC awarding Sellers damages in an amount to be determined at trial but in no event less than $3,000,000, plus interest.

D.     On Sellers' Fourth Cause of Action, for an order against Oneworld Star International Holdings Ltd. awarding Sellers damages in an amount to be determined at trial but in no event less than $5,645,000, plus interest;

E.     On Sellers' Fifth Cause of Action, for an order (i) declaring that APS has breached its indemnification obligations under the Asset Purchase Agreement; and (ii) ordering APS to pay Sellers an amount to be determined at trial but in no

1   event less than $5,645,000; (iii) ordering APS to pay Sellers' costs and fees,

2   including attorneys' fees, incurred in this action;

3        F.     On Sellers' Sixth Cause of Action, for an order (i) declaring that

4   Active Holdings LLC has breached its indemnification obligations under the Asset

5   Purchase Agreement; and (ii) ordering Active Holdings LLC to pay Sellers an

6   amount to be determined at trial but in no event less than $5,645,000; (iii) ordering

7   Active Holdings LLC to pay Sellers' costs and fees, including attorneys' fees,

8   incurred in this action;

9        G.     Reasonable attorneys' fees and costs, and such other and further relief

10  as the Court deems just and proper.

11  Dated:    March 12, 2020                    DECHERT LLP

12

13                                             By:/s/ *David H. Stern*
                                                   David H. Stern
14                                                 Alex Spjute
                                                   Anna Do
15
                                               *Attorneys for Plaintiffs*
16                                             *Active Sports Lifestyle USA, LLC,*
                                               *ARS Brands, LLC, and Active RS*
17                                             *Holdings, Inc.*

18

19

20

21

22

23

24

25

26

27

28